ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400
Facsimile: (212) 753-0396
Michael S. Davis
Ronald M. Neumann

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Bryce L. Friedman
Alexander B. Simkin

*Attorneys for AIU Insurance Company, American Home Assurance Company, Chartis Specialty Insurance Company (formerly known as American International Specialty Lines Insurance Company), Granite State Insurance Company, Illinois National Insurance Company, Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>CHEMTURA CORPORATION *et al.*,<br><br>Debtors, | Chapter 11<br><br>Case No.: 09-11233 (REG) |
| CHEMTURA CORPORATION, AND CHEMTURA CANADA CO./CIE,<br><br>Plaintiffs,<br>v.<br><br>AIU INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY; AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE CO. (n/k/a CHARTIS SPECIALTY INSURANCE COMPANY); GRANITE STATE INSURANCE COMPANY; ILLINOIS NATIONAL INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Defendants. | Jointly Administered<br><br><br>Adversary Proceeding No.: 10-02881(REG) |

**MEMORANDUM OF LAW IN SUPPORT OF CHARTIS INSURERS'
<u>MOTION TO WITHDRAW THE REFERENCE</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ............................................................................................... 7

I.    STANDARD OF LAW ........................................................................... 7

II.    WITHDRAWAL OF THE REFERENCE OF THE ADVERSARY PROCEEDING IS
WARRANTED BECAUSE EVERY FACTOR WEIGHS IN FAVOR OF
WITHDRAWAL ................................................................................. 8

    A.    The Adversary Proceeding is Non-Core. ....................................... 8

        (1)    The Adversary Proceeding is Not Unique to or Uniquely
Affected by the Bankruptcy Proceedings ........................ 9

        (2)    The Adversary Proceeding Does Not Directly Affect a Core
Bankruptcy Function ................................................... 10

    B.    Other Factors Favor Withdrawing the Reference of the Adversary
Proceeding ................................................................... 12

        (1)    The Chartis Insures' Demand for a Trial by Jury is
Sufficient Cause to Withdraw the Reference ................... 12

        (2)    Withdrawal of the Reference Will Ensure Efficient Use of
Judicial Resources and Will Avoid Undue Delay ............... 13

        (3)    Withdrawal of the Reference Will Not Cause and Will
Avoid Forum Shopping ................................................ 15

        (4)    Withdrawal of the Reference Will Not Adversely Affect the
Uniformity of the Bankruptcy Administration ................ 17

III.    IN THE ALTERNATIVE, WITHDRAWAL OF THE REFERENCE OF NON-DEBTOR
CHEMTURA CANADA'S CLAIMS IS WARRANTED SINCE EVERY FACTOR
WEIGHS EVEN MORE HEAVILY IN FAVOR OF WITHDRAWAL WITH REGARDS
TO NON-DEBTOR CHEMTURA CANADA ................................................ 17

CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359 (S.D.N.Y. 2001) ................................ 8, 10, 13

*Grant Thornton Int'l v. Parmalat Finanziaria S.p.A. (In re Parmalat Finanziaria S.p.A.)*, 320 B.R. 46 (S.D.N.Y. 2005) ...................................................................................... 15

*In re 3dfx Interactive, Inc.*, No. C 05-00427 JW, 2005 WL 1074407 (N.D. Cal. May 6, 2005) ............................................................................................................................... 18

*In re Burger Boys,* 94 F.3d 755 (2d Cir. 1996) ............................................................................. 15

*In re Burns and Roe Enterprises, Inc.*, No. 08-4191 (GEB), 2008 WL 4280099 (D.N.J. Sept. 15, 2008) .............................................................................................................. 18

*In re Complete Mgmt. Inc.*, No. 02 CIV. 1736(NRB), 2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002) ...................................................................................................... 15

*In re EbaseOne Corp.*, No. 01-31527-H4-7, 2006 WL 2405732 (Bankr. S.D. Tex. June 14, 2006) ........................................................................................... 9

*In re FMI Forwarding*, No. 01 Civ. 9462(DAB), 2004 WL 1348956 (S.D.N.Y. June 16, 2004) .......................................................................................................................... 13

*In re G.M. Crocetti, Inc.*, No. 08 Civ. 6239(DLC), 2008 WL 4601278 (S.D.N.Y. Oct. 15, 2008) ............................................................................................................................ 15

*In re Kentile Floors*, No. 92B46466 (BRL), 1995 WL 479512 (S.D.N.Y. Aug. 10, 1995) ........................................................................................................................................... 13

*In re Northwest Airlines Corp.*, 384 B.R. 51 (S.D.N.Y. 2008) ..................................................... 8

*In re Orion Pictures Corp.*, 4 F.3d 1095 (2d. Cir. 1993) ......................................................... 8, 12

*In re Pied Piper Casuals, Inc.*, 65 B.R. 780 (S.D.N.Y. 1986) ...................................................... 9

*In re The VWE Group, Inc.*, 359 B.R. 441 (S.D.N.Y. 2007) ........................................ 8, 13, 16, 17

*In re U.S. Brass Corp.*, 110 F.3d 1261 (7th Cir. 1997) .......................................................... 10, 17

*In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999) ................................................................ 10, 12

*Interconnect Telephone Services, Inc, v. Farren*, 59 B.R. 397 (S.D.N.Y. 1986) ........................ 10

*Lawrence Group v. Hartford Cas. Ins. Co. (In re Lawrence Group, Inc.)*, 285 B.R. 784 (N.D.N.Y. 2002) ............................................................................................... 9, 15, 17

*Luan Investment S.E. v. Franklin 145 Corp. (In re: Petrie Retail)*, 304 F.3d 223
(2d Cir. 2002).............................................................................................................. 8

*Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436 (2d Cir. 2005)............................. 8, 9, 12, 13

*Petition of McMahon*, 222 B.R. 205 (S.D.N.Y. 1998) ...................................................... 9

*Travelers Indemnity Co. v. The Babcock and Wilcox Co.*, No. CIV.A. 01-3387,
2002 WL 100625 (E.D. La. Jan. 23, 2002)............................................................ 10

*Vornado Realty Trust v. Stop & Shop Supermarket Cos. (In re Bradlees, Inc.)*, No.
04 Civ. 5500(HB), 2005 WL 106794 (S.D.N.Y. Jan. 19, 2005) ........................... 17

*Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*,
201 B.R. 635 (S.D.N.Y. 1996)............................................................................. 9, 14

*Wedtech Corp. v. London (In re Wedtech Corp.)*, 81 B.R. 237 (Bankr. S.D.N.Y.)..................... 15

## STATUTES

28 U.S.C. § 157(b)(1) ........................................................................................................ 8

28 U.S.C. § 157(c)(1)..................................................................................................... 2, 13

28 U.S.C. § 157(d) ....................................................................................................... 1, 7, 18

## RULES

Fed. R. Bankr. P. 5011(a) ................................................................................................... 1

Local Bankr. R. 5011-1..................................................................................................... 1

Defendants/**Chartis Insurers**[1] respectfully submit this memorandum of law, together with the Declaration of Bryce L. Friedman dated March 29, 2010 ("**Friedman Dec.**"), in support of their motion pursuant to 28 U.S.C. § 157(d), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure and Rule 5011-1 of the Local Bankruptcy Rules, and hereby move for the entry of an order withdrawing the reference of the above-captioned Adversary Proceeding (the "**Adversary Proceeding**") commenced by debtor Chemtura Corporation ("**Chemtura US**" or "**Debtor**") and non-debtor Chemtura Canada Co./Cie ("**Chemtura Canada**") (collectively "**Plaintiffs**") in the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**").

## PRELIMINARY STATEMENT

The reference should be withdrawn from the Bankruptcy Court because this insurance coverage dispute that is governed by contract and state law (i) is not a core part of Chemtura US's bankruptcy proceeding, and (ii) all other factors militate in favor of withdrawal. Insurance coverage disputes between debtors and their insurers related to pre-petition insurance policies governed by non-bankruptcy state law, like Chemtura US's claims here, are non-core and should not be resolved by the Bankruptcy Court. Likewise, insurance coverage disputes between *non-debtors* and insurers, like Chemtura Canada's claims here, are always non-core. This Adversary Proceeding is neither "unique to" nor "uniquely affected by" debtor Chemtura US's bankruptcy proceeding. This Adversary Proceeding merely seeks to resolve whether and to what extent certain personal injury claims alleging injury from exposure to diacetyl (the

---

[1] The "**Chartis Insurers**" are AIU Insurance Company, American Home Assurance Company, Chartis Specialty Insurance Company (formerly known as American International Specialty Lines Insurance Company), Granite State Insurance Company, Illinois National Insurance Company, Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA.

"**Diacetyl Claims**") are covered by pre-petition insurance contracts.  Resolution of this insurance coverage dispute between debtor Chemtura US and its insurers is not necessary to achieve confirmation of a plan of reorganization (and resolution of the insurance coverage dispute between non-debtor Chemtura Canada and its insurers is not holding up any potential reorganization plan of debtor Chemtura US).  Indeed, the only reason Plaintiffs brought this action was in an effort to obtain a strategic advantage over the Chartis Insurers who, just weeks earlier, had instituted their own declaratory judgment action against Chemtura Canada (and one of its primary insurers) in New York State Supreme Court and had the next day filed a request with the Bankruptcy Court to lift the automatic bankruptcy stay in order to allow the Chartis Insurers to add Chemtura US as a party to the pending state action.[2]

In light of the non-core nature of the Adversary Proceeding and the pre-existing State Court Action, there is substantial cause to withdraw the reference so that the issues raised in the Adversary Proceeding can be litigated in the District Court or state court.  Since this is a non-core proceeding and the Chartis Insurers have invoked their right to trial by jury, there is sufficient cause to withdraw the reference.  Furthermore, because the Bankruptcy Court does not have jurisdiction to issue final orders or judgments in this non-core proceeding, *see* 28 U.S.C. § 157(c)(1), having the case proceed first in the Bankruptcy Court will add an unnecessary layer of proceedings that will result in proposed findings and conclusions that will need to be reviewed

---

[2]  The Chartis Insurers action against Chemtura Canada and its primary insurer (Zurich Insurance Company) is styled *AIU Insurance Co. v. Chemtura Canada, et al.*, Index No. 600307/10 (N.Y. Sup Ct. New York County); Case No. 10-cv-1597-DC (S.D.N.Y.) (the "**State Court Action**").  Chemtura Canada has removed the State Court Action to federal court but the Chartis Insurers have moved to remand the State Court Action back to New York Supreme Court. *See* Memorandum of Law in Support of Plaintiffs' Motion for an Order Remanding this Case to State Court filed on March 29, 2010 in the action styled *AIU Insurance Co. v. Chemtura Canada, et al.*, Case No. 10-cv-1597 (DC-KNF) (S.D.N.Y.).

*de novo* by the district court, which will result in significant judicial inefficiencies and undue delays. Instead, judicial efficiency would be best served by having the coverage dispute resolved globally in a single forum with all relevant parties rather than piecemeal by different courts, which cannot happen in the Bankruptcy Court. Additionally, withdrawing the reference of the Adversary Proceeding will prevent forum shopping by forestalling Plaintiffs' efforts to force Chartis Insurers to litigate the issues raised by the State Court Action in Plaintiffs' preferred forum (the Bankruptcy Court). Finally, withdrawal of the reference of the Adversary Proceeding will not have any impact on the uniformity of the bankruptcy administration since it raises solely issues of state, not bankruptcy, law.

## STATEMENT OF FACTS

Chemtura US's Bankruptcy Proceeding

Chemtura US filed for bankruptcy along with 26 of its affiliated entities on March 18, 2009. *See* Voluntary Chapter 11 Petition, at Schedule 1, filed by Chemtura Corporation and 26 of its affiliated entities on March 18, 2009 in the action styled *In re: Chemtura Corp., et al.*, No. 09-11233 (Bankr. S.D.N.Y.) (Dkt. No. 1)[3]. Chemtura Canada did not file for bankruptcy then and has not filed since then. In its first day filings, Chemtura US points to adverse market conditions, pending debt maturities and potential defaults on the debtors' long-term obligations, environmental liabilities, pension and other post-retirement benefit expenses as the primary causes of its bankruptcy filing. *See* Declaration of Stephen Forsyth, Executive Vice President and Chief Financial Officer of Chemtura Corporation, in Support of First Day Pleadings at 22-27 filed on March 18, 2009 in the action styled *In re: Chemtura Corp., et al.*, No. 09-11233 (Bankr.

---

[3]     We have not attached each document referenced in this memorandum of law because it would be voluminous. Documents not attached are readily available on the dockets of the respective courts and the docket numbers have been provided. At the Court's request we can provide copies of the referenced documents.

S.D.N.Y.) (Dkt. No. 3). Chemtura US does not even mention diacetyl claims or insurance coverage in any of its first day filings. *See id.* Indeed, there were only 21 diacetyl lawsuits pending against Chemtura US at the time of its bankruptcy filings. *See* Debtors' Objection to Motion for an Order Granting Relief from the Automatic Stay and Cross Motion for Enforcement of the Automatic Stay at ¶ 7 filed on February 23, 2010 in the action styled *In re: Chemtura Corp., et al.*, No. 09-11233 (Bankr. S.D.N.Y.) (Dkt. No. 2063).

Since the first months of its bankruptcy proceeding, Chemtura US has acknowledged that there is uncertainty concerning the extent of its insurance coverage for Diacetyl Claims. *See* Memorandum of Law in Support of Chemtura Corporation's Motion for a Temporary Restraining Order and Preliminary Injunction Staying the Diacetyl Litigation and Future Diacetyl Actions against Chemtura Canada Corporation and Citrus Allied Essences, Ltd. at 28 n.9 filed on June 17, 2009 in the action styled *In re: Chemtura Corp., et al.*, No. 09-11233, Adv. No. 09-01282 (Bankr. S.D.N.Y.) (Dkt. No. 3) ("Although an insurer has being [sic] paying the defense costs of a number of the diacetyl actions, it is unclear whether the insurer will continue to do so."); Ex. A (Transcript of June 23, 2009 TRO Hearing) at 31 (Mr. Zott: "[The insurers have] disputed coverage and they've sent long letters on numerous defenses. . . . [T]hey've sent twenty-five page letters saying for all these reasons we're not obligated to cover. . . .")[4]; Ex. B (Transcript of July 29, 2009 Deposition of Jeffrey Lenser) at 39 (Mr. Lenser: "[T]here is no agreement between National Union or AIG as to whether or not – what the [self insured retention] is in amount and whether or not any portion of it has been exhausted."). However, Chemtura US took no steps to resolve this uncertainty as part of its bankruptcy process. This remained true after the approximate 375 proof of claims related to Diacetyl Claims

---

[4]    All references to exhibits (or "Ex.") are to exhibits attached to the Friedman Dec.

were filed by the bar date on October 30, 2009.  Indeed, it was not until after the Chartis Insurers

instituted a declaratory judgment action against Chemtura Canada (and sought relief from the

automatic bankruptcy stay to add Chemtura US as a defendant) that Chemtura US belatedly

concluded that the resolution of insurance coverage for Diacetyl Claims was actually a "key

gating items to developing and confirming a plan." *See* Debtors' Objection to Relief from Stay

Motion) at ¶ 14.

The Insurance Coverage Dispute

Beginning years before Chemtura US's bankruptcy petition, Chemtura US and

Chemtura Canada began claiming (and both still claim) rights to insurance coverage for Diacetyl

Claims under certain umbrella and excess insurance policies allegedly issued by the Chartis

Insurers.  *See* Adversary Proceeding Complaint, at ¶ 1-4, filed on March 3, 2010 in the action

styled *Chemtura Canada Co./Cie. v. AIU Insurance Company, et al., (In re: Chemtura Corp.,),*

No. 09-11233, Adv. No. 10-02881 (Bankr. S.D.N.Y) (Dkt. No. 1).  Neither Chemtura US nor

Chemtura Canada is the Named Insured on the majority of the insurance policies that both

parties claim rights under.  In order to resolve the insurance coverage dispute for the Diacetyl

Claims, the Chartis Insurers instituted a declaratory judgment action against Chemtura Canada

and Zurich Insurance Company ("**Zurich**") in New York Supreme Court (a number of the

insurance policies that Chemtura Canada claims coverage under were issued in New York).  *See*

Ex. C (State Court Complaint).  This State Court Action (now removed to the District Court) is

styled *AIU Insurance Co. v. Chemtura Canada, et al.*, Index No. 600307/10 (N.Y. Sup Ct. New

York County); Case No. 10-cv-01597-DC (S.D.N.Y.).  Because Chemtura US was in bankruptcy

(Chemtura Canada was not and still is not), the Chartis Insurers did not name Chemtura US as a

defendant in the State Court Action.  Instead, the day after filing the State Court Action, the

Chartis Insurers filed a motion with the bankruptcy court administering Chemtura US's bankruptcy proceeding seeking relief from the automatic bankruptcy stay in order to add Chemtura US as a party to the pending State Court Action since Chemtura US claims rights to coverage under many of the same policies as Chemtura Canada and has raised many of the same disputed contract issues as Chemtura Canada. *See* Chartis Insurers' Motion for an Order Granting Relief from the Automatic Stay filed on February 5, 2010 in the action styled *In re: Chemtura Corp., et al.*, No. 09-11233 (Bankr. S.D.N.Y.) (Dkt. No. 1908).

In response to the Chartis Insurers' request for relief from the automatic stay, Chemtura US (along with all 26 of its co-debtors) filed a cross-motion claiming that the State Court Action violated the automatic stay notwithstanding the fact that Chemtura US was not a party and that a declaration sought regarding Chemtura Canada's rights (if any) under certain insurance policies can have no bearing on Chemtura US's rights under even the very same policies.[5] *See* Debtors' Objection to Relief from Stay Motion. While claiming that the State Court Action filed by the Chartis Insurers could not go forward because of the automatic bankruptcy stay, Chemtura US and Chemtura Canada were apparently simultaneously working

---

[5]    The State Court Action does also seek money damages from Chemtura Canada and/or Zurich, Chemtura Canada's primary insurer, but this relief also could not possibly affect Chemtura US's estate as Chemtura US has specifically disclaimed any right to coverage under the insurance policy issued by Zurich. *See* Ex. D (Letter from Jeffrey M. Lenser to Bryce L. Friedman dated February 22, 2010) at 1-2 ("[T]he Zurich policy provides coverage to Chemtura Canada but does not cover Chemtura US."). If that fact were not enough to conclude that the relief sought could not affect Chemtura US's estate, the Zurich Policy contains language that provides that the limits of its policy are not eroded by the payment of defense costs. Thus, even though the State Court Action seeks money from Zurich, this money is for defense costs and the Zurich policy does not erode by the payment of defense costs. In other words, whether Zurich pays $10 or $10 million in defense costs, the limits of the coverage available to any insured under the Zurich policy should remain the same.

on drafting the complaint in the instant Adversary Proceeding seeking substantially similar relief. *Compare* Adversary Proceeding Complaint *with* Ex. C (State Court Complaint).

On February 25, 2010, Chemtura Canada filed a procedurally and substantively improper Notice of Removal of the State Court Action thereby forcing the Chartis Insurers to file motion to remand the State Court Action back to New York Supreme Court. *See* Notice of Removal filed on February 25, 2010 in the action styled *AIU Insurance Co. v. Chemtura Canada, et al.*, Case No. 10-cv-1597 (DC-KNF) (S.D.N.Y.) (Dkt. No 1). Having temporarily tied up the State Court Action with procedural gamesmanship, on March 3, 2010, Chemtura Canada and Chemtura US commenced this Adversary Proceeding against the Chartis Insurers seeking substantially similar relief (albeit less comprehensive) to the relief sought by the Chartis Insurers in the State Court Action. Like the State Court Action, the Adversary Proceeding seeks, amongst other things, a declaration of the rights and obligations of the Chartis Insurers under various insurance policies allegedly issued by them for the Diacetyl Claims pending against Chemtura US and Chemtura Canada.[6] *See* Adversary Proceeding Complaint at ¶ 1-4. The Adversary Proceeding (in Chemtura US's bankruptcy proceeding) seeks to resolve not only Chemtura US's rights to coverage under certain insurance policies for the Diacetyl Claims, but also seeks to resolve non-debtor Chemtura Canada's rights to coverage under these same insurance policies. *Id.*

## ARGUMENT

### I.   STANDARD OF LAW

A district court "may withdraw, in whole or in part," the reference to the bankruptcy court to hear an adversary proceeding, "for cause shown." *See* 28 U.S.C. § 157(d).

---

[6]   Some Diacetyl Claims are pending against both Chemtura US and Chemtura Canada. Others are pending only against one of the entities.

In evaluating whether cause is shown and therefore withdrawal is appropriate, the district court "should first evaluate whether the claim is core or non-core." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *accord In re The VWE Group, Inc.*, 359 B.R. 441, 446 (S.D.N.Y. 2007). Then, "once [the] district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.*, 4 F.3d at 1101. Although the core/non-core determination is not dispositive of the motion to withdraw the reference, it "is upon this issue that questions of efficiency and uniformity will turn." *Id.*; *see also 1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359, 367 (S.D.N.Y. 2001) ("[A]lthough the core/non-core determination is not dispositive of a motion to withdraw the reference, 'it is upon this issue that questions of efficiency and uniformity will turn,' particularly when a party has requested a jury trial.") (citing *In re Orion Pictures Corp.* and other cases). Cause for withdrawal of the reference of this Adversary Proceeding is present.

## II.   WITHDRAWAL OF THE REFERENCE OF THE ADVERSARY PROCEEDING IS WARRANTED BECAUSE EVERY FACTOR WEIGHS IN FAVOR OF WITHDRAWAL.

### A.   The Adversary Proceeding is Non-Core.

A core proceeding is one "arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). A proceeding is core "if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceeding[] directly affect[s] a core bankruptcy function." *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) (citations omitted); *accord Luan Investment S.E. v. Franklin 145 Corp. (In re: Petrie Retail)*, 304 F.3d 223, 229 (2d Cir. 2002); *In re Northwest Airlines Corp.*, 384 B.R. 51, 57 (S.D.N.Y. 2008). *See also In re The VWE Group, Inc.*, 359 B.R. at 448 ("[C]ore proceedings

8

must invoke a substantive right created by federal bankruptcy law that would not exist outside of a bankruptcy case.") (citations omitted); *Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996) ("A core proceeding must invoke a substantive right provided by title 11.").

(1)     The Adversary Proceeding is Not Unique to or Uniquely Affected by the Bankruptcy Proceedings.

The Adversary Proceeding arises under state law and relates to the rights and obligations of non-debtor Chemtura Canada and debtor Chemtura US under various pre-petition insurance policies allegedly issued by the Chartis Insurers and that allegedly cover liability in connection with the Diacetyl Claims. These insurance coverage claims did exist and would exist outside of Chemtura US's bankruptcy case. Courts have routinely found insurance coverage disputes concerning pre-petition insurance contracts[7] to be the type of state law cases that are neither "unique to" or "uniquely affected by" a bankruptcy proceeding. *See Mt. McKinley*, 399 F.3d at 448 (a declaratory judgment action seeking declaration regarding liability of insurers to defend and indemnify against asbestos-related tort litigation is non-core); *Lawrence Group v. Hartford Cas. Ins. Co. (In re Lawrence Group, Inc.)*, 285 B.R. 784, 788 (N.D.N.Y. 2002) (action regarding pre-petition insurance contract found to be non-core); *In re EbaseOne Corp.*, No. 01-31527-H4-7, 2006 WL 2405732, at *3 (Bankr. S.D. Tex. June 14, 2006) (finding a dispute over an insurance contract to be purely a matter of state law and therefore non-core); *In re Pied Piper Casuals, Inc.*, 65 B.R. 780, 781 (S.D.N.Y. 1986) (reversing a bankruptcy court's exercise of core

---

[7]     The Adversary Proceeding is a contract dispute concerning solely pre-petition contracts. This weighs heavily against a finding of core jurisdiction. *See Mt. McKinley Ins. Co.*, 399 F.3d at 448 ("Militating against a finding of core jurisdiction was the fact that the policies were purchased pre-petition.") (citations omitted); *Petition of McMahon*, 222 B.R. 205, 208 (S.D.N.Y. 1998) (disputes over pre-petition contracts are non-core, irrespective of the timing of the breach of contract).

proceeding jurisdiction over an insurance coverage dispute); *see also 1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359, 367 (S.D.N.Y. 2001) (finding that debtors adversary proceeding was non-core because it was a "conventional breach of contract action that does not depend in any respect on the bankruptcy laws and that could have been brought in another court"); *Interconnect Tel. Servs., Inc, v. Farren*, 59 B.R. 397, 400 (S.D.N.Y. 1986) ("Non-core proceedings consist of those claims arising under traditional state law . . . . They are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court.") (citations omitted).

    (2)    <u>The Adversary Proceeding Does Not Directly Affect a Core Bankruptcy Function.</u>

       The Bankruptcy Court's core functions are claims allowance, "fixing the order of priority of creditor claims against a debtor . . . placing the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors . . . and administering all property in the bankrupt's possession." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999) (internal marks and citations omitted). This insurance coverage dispute does not have a sufficient effect on a core bankruptcy function or the administration of the estate to render the proceeding core. Where an insurance dispute will only determine the scope of coverage, it is has no actual effect on the debtor's property. *See In re U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997) (finding that insurers instituting a declaratory judgment action against a debtor were not "trying to take away [debtor's] property. The issue in these cases is the scope of the insurances policies, not their ownership."); *Travelers Indemnity Co. v. The Babcock and Wilcox Co.*, No. CIV.A. 01-3387, 2002 WL 100625, at *3 (E.D. La. Jan. 23, 2002) ("The fact that it is an important right to the bankrupt [involving $500 million in coverage] is irrelevant.") (quoting *In re U.S. Brass Corp.*, 110 F.3d at 1268). The Adversary Proceeding seeks

10

declarations regarding the rights and obligations of the Chartis Insurers with regard to policies

allegedly issued by the Chartis Insurers to cover cost arising from diacetyl products liability

litigation. Significantly, the insurance policies at issue in the Adversary Proceeding are not the

only assets through which the debtor Chemtura US may satisfy the claims of the diacetyl

claimants. Indeed, an equity committee has been appointed in Chemtura US's bankruptcy

proceeding, which means that the debtor Chemtura US has substantial assets and may even have

sufficient assets to pay all of its creditors (including the diacetyl claimants) the entirety of what

they are owed. *See* Appointment of Official Committee of Equity Security Holders filed on

December 29, 2009 in the action styled *In re: Chemtura Corp., et al.*, No. 09-11233 (Bankr.

S.D.N.Y) (Dkt. No. 1676); *see also* Forsyth Dec. at Ex. D (the total asset value of Chemtura US

and its domestic affiliates as of December 31, 2008 is $3.06 billion).

Chemtura US's belated assertion that resolving issues surrounding its insurance

coverage for Diacetyl Claims is a "gating item[] to developing and confirming a plan" is nothing

other than a litigation tactic designed at compelling the parties to litigate non-core insurance

coverage issues in Plaintiffs preferred forum. *See* Debtors' Objection to Relief from Stay

Motion at ¶ 14. For nine months after debtor Chemtura US filed for bankruptcy and before the

Chartis Insurers instituted the State Court Action, debtor Chemtura US took no steps to involve

the Bankruptcy Court in the resolution of the uncertainty concerning its insurance coverage for

the Diacetyl Claims (notwithstanding its public acknowledgements about the existence of this

uncertainty). In fact, far from being a "gating item" for confirming a plan, the Diacetyl Claims

were not even mentioned in debtor Chemtura US's first day bankruptcy filings. However, less

than three weeks after the Chartis Insurers initiated the State Court Action and in response to the

Chartis Insurers' motion seeking to add debtor Chemtura US as a party to the recently filed State

11

Court Action, debtor Chemtura US belatedly claimed that the resolution of this precise insurance coverage dispute was one of the "gating items to developing and confirming a plan." *See* Debtors' Objection to Relief from Stay Motion at ¶ 14. This is plainly not the case. The Diacetyl Claims have not yet been valued and there is no reason to believe they are more than a nuisance at this point. Further, to the extent necessary, any plan could incorporate alternate payment schemes based on the outcome of the insurance coverage litigation – a common approach to tort claims facing a debtor. Indeed, Debtors have not yet proposed a plan or even suggested the shadowy contours of any plan with respect to resolution of the Diacetyl Claims.

Plaintiffs rely on *In re U.S. Lines, Inc.* to support their conclusion that the Bankruptcy Court has core jurisdiction over the Adversary Proceeding "because Chemtura Canada and Chemtura share insurance policies, and a debtor's insurance policies are assets of its bankruptcy estate." *See* Adversary Proceeding Complaint at ¶ 17. However, as the Second Circuit highlighted in *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005), the finding of core jurisdiction in *In re U.S. Lines*, was "based on the mutually re-reinforcing effects of two factors. First, the policies were the only assets available to pay the asbestos claimants. Second, the policies were pay-first policies that required the trustee to pay the claims and then seek indemnification." *Id.* (citations omitted). Neither factor is present here.

### B. Other Factors Favor Withdrawing the Reference of the Adversary Proceeding

#### (1) The Chartis Insures' Demand for a Trial by Jury is Sufficient Cause to Withdraw the Reference.

The Chartis Insurers have demanded a jury trial of the insurance coverage disputes with non-debtor Chemtura Canada and will demand one in the Adversary Proceeding. This jury demand is sufficient cause to withdraw the reference. *See In re Orion Pictures Corp.*, 4 F.3d at 1101 ("[T]he constitution prohibits bankruptcy courts from holding jury trials in non-

core matters. If a case is non-core and a jury demand has been filed . . . the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference."); *In re The VWE Group*, 359 B.R. at 451 ("Under *Orion*, the court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference."); *1800Postcards, Inc.*, 153 F. Supp. 2d at 367 (concluding that where defendants "have requested a jury trial and neither has consented to final resolution of the non-core matter by the Bankruptcy Court[,] [w]ithdrawal of the reference . . . would solve the constitutional problems that would arise were the adversary action to proceed to trial.").

        (2)     Withdrawal of the Reference Will Ensure Efficient Use of Judicial Resources and Will Avoid Undue Delay.

Where, as here, an action is non-core, any finding made by a bankruptcy court would be subject to *de novo* review by the district court. *See* 28 U.S.C. § 157(c)(1); *Mt. McKinley*, 399 F.3d at 448. Courts have found that such an outcome is duplicative and leads to unnecessary costs. *See In re The VWE Group*, 359 B.R. at 451 (finding that where the district court has *de novo* review unnecessary cost can be avoided "by a single proceeding in [the district] court"). Therefore, where the action is non-core, courts consistently find that preservation of judicial economy also favors withdrawal of the reference. *See In re FMI Forwarding*, No. 01 Civ. 9462(DAB), 2004 WL 1348956, at *6 (S.D.N.Y. June 16, 2004) (finding that withdrawal of the reference proper because it would "allow for the claim to be adjudicated and disposed of in one proceeding, thereby saving judicial and party time and resources"); *In re Kentile Floors, Inc.*, No. 92B46466 (BRL), 1995 WL 479512, at *4 (S.D.N.Y. Aug. 10, 1995) (concluding that because the action was "non-core, the bankruptcy court's

determination would be subject to *de novo* review" hence "a single proceeding in [the district court] would avoid unnecessary cost").[8]

In addition, the State Court Action is more comprehensive and contains claims that are not pending in the instant action. For example, the Chartis Insurers claims against Zurich concerning Zurich's obligations under certain insurance policies it issued are pending only in the State Court Action and will proceed there. Likewise, claims by the Insurance Company of the State of Pennsylvania against both Chemtura Canada and Zurich are pending only in the State Court Action and will proceed there.[9] While there is a dispute over what forum the State Court Action will proceed in, and whether debtor Chemtura US is a proper party to it, there is no dispute that there are claims asserted in the State Court Action that will go forward and are not within the scope of the instant Adversary Proceeding. Since judicial economy is best served by having one court globally resolve all related issues that involve similar facts, documents, and claims, principles of judicial efficiency weigh strongly in favor of having a single forum (either the district court or the state court) resolve all the diacetyl-related insurance coverage issues between non-debtors Chemtura Canada, the Chartis Insurers, Zurich, and debtor Chemtura US. *See Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 640 (S.D.N.Y. 1996) ("[W]here a proceeding in bankruptcy involves common issues of law and fact

---

[8]  Even if debtor Chemtura US claims that resolution of its insurance coverage dispute with the Chartis Insurers concerning insurance coverage for the Diacetyl Claims is somehow "core," it is clear that non-debtor Chemtura Canada's insurance coverage dispute with the Chartis Insurers cannot be "core" to a third party's bankruptcy proceeding. Because some of the claims in the Adversary Proceeding will necessarily be subject to *de novo* review by the district court, efficient use of judicial resources would still weigh heavily in favor of conducting the whole case in the district court at the outset.

[9]  The Insurance Company of the State of Pennsylvania ("**ISOP**") is affiliated with the Chartis Insurers. ISOP is a Plaintiff in the State Court Action but was not named as a Defendant in the Adversary Proceeding, thus its claims are only pending in the State Court Action.

with a case pending in district court, the overlapping of facts, transactions and issues in the two cases is good cause for withdrawal of the reference and consolidation with the district court proceeding.") (citation omitted); *Wedtech Corp. v. London (In re Wedtech Corp.)*, 81 B.R. 237, 239 (Bankr. S.D.N.Y.) (same).

In these circumstances, withdrawal of the reference is appropriate even if the court were to find that "core" jurisdiction exists with regards to debtor Chemtura US's dispute with the Chartis Insurers over insurance coverage for Diacetyl Claims. *See In re G.M. Crocetti, Inc.*, No. 08 Civ. 6239(DLC), 2008 WL 4601278, at *5 (S.D.N.Y. Oct. 15, 2008) ("[C]ore proceedings may be withdrawn where directing such questions to the Bankruptcy Court in the first instance would be inefficient and counterproductive.") (citations omitted); *Grant Thornton Int'l v. Parmalat Finanziaria S.p.A. (In re Parmalat Finanziaria S.p.A.)*, 320 B.R. 46, 50–51 (S.D.N.Y. 2005) (finding that the "higher interest" of judicial efficiency was grounds for withdrawing the reference of a core proceeding); *In re Complete Mgmt. Inc.*, No. 02 CIV. 1736(NRB), 2002 WL 31163878, *3 (S.D.N.Y. Sept. 27, 2002) ("[E]ven assuming that the . . . adversary proceeding is technically a core proceeding, we find that the other factors . . . [including] considerations of efficiency and fairness favor withdrawal of the reference."); *see also In re Burger Boys Inc.*, 94 F.3d 755, 762 (2d Cir. 1996) (affirming district court's withdrawal of reference even though matter involved was "plainly a core bankruptcy matter").

     (3)   <u>Withdrawal of the Reference Will Not Cause and Will Avoid Forum Shopping.</u>

Withdrawal of the reference will prevent, not cause, forum shopping. *See In re Lawrence Group, Inc.*, 285 B.R. at 789 n.6 (withdrawal of the reference is appropriate because "[a]t the time [the insurer] issued the policy, it had no reason to believe that any disputes arising out of the policy would be litigated in a bankruptcy court. [The insurer] should not be obligated

15

to litigate in a forum that was not reasonably . . . foreseeable or expected at the time it issued the policies."); *see also In re The VWE Group*, 359 B.R. at 451 (finding that "withdrawing the reference will not result in forum-shopping because, due to defendants' demand for a jury trial on [the] non-core claim, the parties have no choice but to try the case in [the district court]"). Non-debtor Chemtura Canada and debtor Chemtura US are plainly engaging in forum shopping by seeking to compel the Chartis Insurers to litigate issues of pre-petition contract application in the Bankruptcy Court. For nine months after debtor Chemtura US filed for bankruptcy and before the Chartis Insurers instituted the State Court Action, debtor Chemtura US took no steps to involve the Bankruptcy Court in the resolution of the uncertainty concerning its insurance coverage for Diacetyl Claims. However, less than three weeks after the Chartis Insurers initiated the State Court Action and in response to the Chartis Insurers motion seeking to add debtor Chemtura US as a party to the recently filed State Court Action, debtor Chemtura US claimed that the resolution of this precise insurance coverage dispute was one of the "gating items to developing and confirming a plan." *See* Debtors' Objection to Relief from Stay Motion at ¶ 14. Then, three days later on February 25, 2010, non-debtor Chemtura Canada removed the State Court Action commenced by the Chartis Insurers to the District Court. *See* Notice of Removal. In its Notice of Removal, non-debtor Chemtura Canada requested that the District Court refer the State Court Action to the Bankruptcy Court to be administered with its affiliate's Chapter 11 Case. *See* Notice of Removal at ¶ 12. To date, the District Court has not found it necessary to refer the case to the Bankruptcy Court. Given the fact that the District Court had not referred the State Court Action to the Bankruptcy Court, a week later, on March 3, 2010, non-debtor Chemtura Canada and debtor Chemtura U.S. filed a competing lawsuit (the Adversary Proceeding) in their preferred forum (the Bankruptcy Court) to address similar issues to the ones

already raised in the State Court Action.  Non-debtor Chemtura Canada and debtor Chemtura US's brazen forum shopping is yet another factor weighing in favor of withdrawing the reference.  *See In re Lawrence Group*, Inc., 285 B.R. at 788-89 ("prevention of forum shopping" favors withdrawal of the reference).  *See also Vornado Realty Trust v. Stop & Shop Supermarket Cos. (In re Bradlees, Inc.)*, No. 04 Civ. 5500(HB), 2005 WL 106794, at *8 (S.D.N.Y. Jan. 19, 2005) (acknowledging that an "attempt to manufacture bankruptcy jurisdiction in a case that was once properly before the New York State Supreme Court" was "forum shopping" and "should not be rewarded"); *In re U.S. Brass Corp.*, 110 F.3d at 1265 ("The use of the Bankruptcy Code to obtain a favorable forum should not be encouraged.").

(4)   Withdrawal of the Reference Will Not Adversely Affect the Uniformity of the Bankruptcy Administration.

Where a proceeding is not brought under bankruptcy law, it will not have an adverse affect on the uniformity of the bankruptcy administration.  *See In re The VWE Group*, 359 B.R. at 451 (finding that withdrawal of the reference of a non-core claim will not "adversely affect the uniformity of bankruptcy administration" when the claim "(a) is not brought under bankruptcy law; (b) arose prior to and independent of the Debtor's bankruptcy filing; and (c) does not otherwise concern administration of the bankruptcy estate").  The Adversary Proceeding is brought under state, not bankruptcy, law.  It will not affect the uniformity of bankruptcy administration.

**III.    IN THE ALTERNATIVE, WITHDRAWAL OF THE REFERENCE OF NON-DEBTOR CHEMTURA CANADA'S CLAIMS IS WARRANTED SINCE EVERY FACTOR WEIGHS EVEN MORE HEAVILY IN FAVOR OF WITHDRAWAL WITH REGARDS TO NON-DEBTOR CHEMTURA CANADA.**

Even if this Court is not inclined to withdraw the reference for the entirety of the Adversary Proceeding it should, at a minimum, withdraw the reference for the claims asserted by non-debtor Chemtura Canada against its non-debtor insurers.  This Court is not prohibited from

17

withdrawing the reference of some claims merely as a result of the presence of others in the same complaint. *See* 28 U.S.C. § 157(d) ("The district court may withdraw, *in whole or in part*, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.") (emphasis added); *see also In re Burns & Roe Enter., Inc.*, No. 08-4191 (GEB), 2008 WL 4280099, at *1 (D.N.J. Sept. 15, 2008) ("[T]he Court will withdraw the reference in part . . . ."); *In re 3dfx Interactive, Inc.*, No. C 05-00427 JW, 2005 WL 1074407, at *4 (N.D. Cal. May 6, 2005) (withdrawing the reference as to claims brought by one plaintiff and denying withdrawal as to claims brought by another).

Here, the factors weigh even more heavily in favor of withdrawal of the reference as to the dispute between Chemtura Canada and the Chartis Insurers. The insurance coverage dispute as to non-debtor Chemtura Canada is certainly non-core. Like the dispute involving debtor Chemtura US, the insurance coverage dispute between the Chartis Insurers and non-debtor Chemtura Canada is neither "unique to" or "uniquely affected by" its affiliate's bankruptcy proceeding. Moreover, as compared to Chemtura US, the insurance coverage dispute with non-debtor Chemtura Canada is even further removed from the administration of the bankruptcy estate and hence does not "directly affect a core bankruptcy function."

The Chartis Insurers right to a jury trial applies equally to non-debtors Chemtura Canada's claims; and therefore at least weighs equally in favor of withdrawal of the reference. Given that non-debtor Chemtura Canada is already a defendant in another pending action (the State Court Action), concerns of judicial economy militate strongly in favor of withdrawal of the reference. And judicial economy will be further preserved by withdrawing the reference and having one forum globally resolve the insurance coverage dispute with all applicable parties, including Zurich and ISOP. Additionally, Chemtura Canada's attempt at forum shopping is even

18

more blatant than Chemtura US's since Chemtura Canada is already a party to an action (the State Court Action) seeking to resolve substantially the same issues as those raised in the Adversary Proceeding.  Lastly, a dispute between non-debtor Chemtura Canada and its non-debtor insurers will simply have no affect on the uniformity of the bankruptcy administration. Hence, withdrawal of the reference as to non-debtor Chemtura Canada is appropriate in the event the Court declines to withdraw the reference as to the entire Adversary Proceeding at this time.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order withdrawing the reference, in whole or in part, of the Adversary Proceeding.

*[remainder of page intentionally left blank]*

Dated:  New York, New York
        March 29, 2010

                                Respectfully submitted,

                                SIMPSON THACHER & BARTLETT LLP

                                By: _____
                                    Bryce L. Friedman (bfriedman@stblaw.com)
                                    Alexander B. Simkin (asimkin@stblaw.com)

                                425 Lexington Avenue
                                New York, N.Y. 10017-3954
                                Telephone: (212) 455-2000
                                Facsimile:  (212) 455-2502

                                ZEICHNER ELLMAN & KRAUSE LLP
                                Michael S. Davis (mdavis@zeklaw.com)
                                Ronald M. Neumann (rneumann@zeklaw.com)
                                575 Lexington Avenue
                                New York, New York 10022
                                (212) 223-0400

                                *Attorneys for AIU Insurance Company, American
                                Home Assurance Company, Chartis Specialty
                                Insurance Company (formerly known as American
                                International Specialty Lines Insurance Company),
                                Granite State Insurance Company, Illinois National
                                Insurance Company, Lexington Insurance
                                Company, and National Union Fire Insurance
                                Company of Pittsburgh, Pa.*